UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80113-CIV-HURLEY

**STUART DUANE AURICH**
    **plaintiff,**
**vs.**

**LEIA SANCHEZ, LPN,**
    **defendant.**
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The *pro se* plaintiff, Stuart Duane Aurich ("Aurich"), brings this §1983 action against defendant Leia Sanchez, LPN ("Sanchez") alleging that Sanchez was deliberately indifferent to his serious medical needs in violation of his constitutional rights during his twelve-day detention at the Palm Beach County Jail in March, 2006.[1]

The case is currently before the court upon the parties' cross- motions for summary judgment [DE# 101, 127]. For reasons which follow, the court has determined to grant the defendant's motion, deny the plaintiff's motion, and enter final summary judgment in favor of the defendant.

### I. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). In deciding whether the moving party has satisfied its burden, the court draws all available inferences from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party.

---

[1] In a related §1983 excessive force claim arising out of the arrest leading up to the detention, *Aurich v Deputy Sheriff Thomas*, Case No.08-80108-Civ-Hurley, the jury returned a verdict in favor of the arresting police officer and the court accordingly entered final judgment in favor of defendant on May 10, 2011.

*Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment. *Id.*

When the moving party meets its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. Rather, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports its claim. *Baranowski v Hart*, 486 F.3d 112, 119 (5th Cir. 2007). This burden will not be satisfied by "some metaphysical doubt" as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by a "mere scintilla" of evidence. *Earley v Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *Boudreaux v Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). Rather, there must be competent evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Walker v Darby*, 911 F.2d 1573 (11th Cir. 1990), citing *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986).

Thus, to successfully resist a motion for summary judgment, the party against whom summary judgment is sought must demonstrate, by affidavits or other relevant and competent evidence, that a genuine issue of fact exists. *United States v. Spitzer*, 245 Fed. Appx. 908 (11th Cir. 2007), citing *Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991); Fed. R. Civ. P. 56(e)["[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein"].

While the court may not weigh conflicting evidence or make credibility determinations in

ruling on a motion for summary judgment, *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282 (11th Cir. 2011); *State Farm Mutual Auto Ins. Co. v. Duckworth*, 648 F.3d 1216 (11th Cir. 2011), where an affidavit is proffered to resist summary judgment and flatly contradicts earlier sworn testimony without valid explanation, the court has discretion to disregard the inconsistent affidavit or strike it as a sham. *See Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224 (11th Cir. 2010); *Van T. Junkins and Assocociates, Inc. v. United States Industries, Inc.,* 736 F.2d 656 (11th Cir. 1984). *Cf. Croom v Balkwill*, 645 F.3d 1240 (11th Cir. 2011)(district court did not abuse discretion in treating inconsistencies between affidavit and prior deposition testimony as "variations of testimony" or "instances of failed memory" going to weight and credibility of evidence as opposed to falsehoods rendering the affidavit a sham); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (11th Cir. 2003)(allowing affidavit where plaintiff offered some plausible explanation for inconsistencies between opposing affidavit and prior sworn statement to police).

## II. Facts[2]

On February 7, 2006, Aurich suffered a work-related shoulder injury at a Florida job site. Through the oversight of the relevant workers' compensation insurance carrier, he was ultimately scheduled to undergo shoulder surgery in a Florida hospital on March 6, 2006.

---

[2] Unless otherwise noted, the recited facts are drawn from the summary judgment evidence consisting of the affidavit of Leia Sanchez filed in support of defendant's motion for summary judgment, together with annexed exhibits, including medical records of the plaintiff [101-1][101-2], deposition transcript of plaintiff Stuart Duane Aurich [101-4], and Workers' Compensation Progress Report [DE# 101-3].

Notably, defendant Sanchez did not file a separate statement of undisputed material facts in separately numbered paragraphs in accordance with S.D. Fla. Local Rule 7.5(A), but rather purports to have included her version of the undisputed facts within her motion for summary judgment [DE# 130]. Because the defendant is not in compliance with the requirements of Local Rule 7.5(A) in this regard, the plaintiff is not held to the Rule 7.5A requirement of making specific individual responses to defendant's purported statement of undisputed facts, and the default operation of Local Rule 7.5(A) – providing that any facts set forth in the movant's statement of facts which are not specifically controverted by the opponent are deemed admitted – does not come into play.

However, on February 28, 2006, deputies from the Palm Beach County Sheriff's Office arrested Aurich on an extradition warrant issued by the State of Michigan and delivered him to the Palm Beach County Jail. On March 1, 2006, Aurich first presented to the jail intake nurse, defendant Leia Sanchez, who took a medical history and documented Aurich's reported broken left shoulder, torn tendons, and ongoing prescription pain regime consisting of Naprosyn, Oxycodone and Darvocet. In course of eliciting his mental health history, Sanchez noted Aurich was at risk for substance abuse withdrawal, and implemented a withdrawal protocol. She offered him a Motrin for immediate pain relief (which Aurich declined due to allergy) and ordered a physician referral for follow up on his physical complaints. Sanchez evaluated Aurich on only two other occasions for purposes of monitoring for potential withdrawal complications (March 4th and March 8th), and otherwise had no other responsibility for his care during his 12-day detention at the Palm Beach County jail.

As the LPN intake nurse, Sanchez did not have authority to order prescriptions or provide medications to Aurich or any inmates at the jail. Prison protocol specifically required a doctor's prescription for dispensation of any medication at the jail, and generally prohibited the prescription or dispensation of any narcotic pain medications to any inmate. As the LPN intake nurse, Sanchez did not participate in the decision as to whether Aurich would be allowed to undergo surgery on March 6th as previously scheduled, or whether he would be allowed to undergo surgery in Florida prior to extradition to Michigan.

On March 2, 2006, Aurich submitted a "health service request" form, reporting a broken left shoulder, a previously scheduled surgery date and constant related pain.

On March 3, 2006, Aurich was examined by Nurse Sharon Linder, who documented his expressed interest in continued use of Naprosyn for his pain and referred his request to a physician's

4

assistant to initiate treatment. On that same day, Nurse Helen DiCaro issued an order for Naprosyn 50 mg by mouth, twice a day for seven days, and the order was approved by prison physician Gary Beauzile. Aurich received his first dose of Naprosyn later that afternoon, and continued to receive Naprosyn as prescribed on a daily basis for the duration of his detention at the jail, up through March 10, 2006.

On March 3, 2006, Danielle Wager, Aurich's workers' compensation case manager, spoke with Theresa Moe at Preferred Governmental Claims and confirmed cancellation of Aurich's March 6th surgery. [3]

On March 10, 2006, Aurich was transferred to a Michigan prison.

In his unsworn amended complaint [DE# 46], Aurich contends that Nurse Sanchez deliberately deprived him of medical attention for a serious medical condition during his stay at the Palm Beach County Jail by withholding his prescription pain medication, interfering with and/or preventing his previously scheduled (March 6th) shoulder surgery, and ignoring his complaints of a toothache and bloody urine and stools, complications which he attributed to the abusive physical actions of the arresting police officer. He also claims that Nurse Sanchez falsely documented his tremors as symptomatic of drug withdrawal, when in reality the tremors were caused by the excruciating pain attendant to his shoulder injury.

Finally, he alleges that Nurse Sanchez told him that he was "Michigan's responsibility," and that if he wanted reconstructive shoulder surgery he would have to wait for the Michigan authorities

---

[3] In her Workers' Compensation Case Management Progress Report, Danielle Wagner documents a March 3, 2006 visit with Aurich's treating orthopedic physician, Dr. Routman, and their discussion of Aurich's "current circumstances." She documents that Dr. Routman issued a script recommending surgery within two weeks, either in Florida or in Michigan. After noting a follow up discussion with Theresa Moe at "Preferred Governmental Claims," Ms. Wagner documents a cancellation of Aurich's previously scheduled surgery in Florida, without indicating at whose direction the decision to defer the surgery was made [DE# 101-3].

5

to provide it. [4]

In unsworn supplemental allegations set forth in his memorandum in opposition to the defendant's now pending summary judgment motion, Aurich further contends that Nurse Sanchez had the discretion and authority to immediately refer him to an outside hospital at the point of intake, in order to ensure immediate care of his serious medical condition, but deliberately and capriciously refused to make an outside referral. Aurich bases this new claim on purported testimony given by defendant Sanchez as witness in the trial of the *Aurich v Thomas* lawsuit; however, he does not supply a copy of relevant portion of the trial transcript but instead relies on his personal reconstruction of Nurse Sanchez's testimony as support for this claim. In his supplemental

---

[4] In later deposition testimony, Aurich testified that Nurse Sanchez was not the healthcare provider who he believed violated his constitutional rights, but rather it was the prison nurse who examined him two days after intake who was generally "nasty" and "disrespectful," calling him "Michigan's responsibility,"and telling him he would not get his pain medication. [Aurich Deposition][DE# 101-4, pp. 82-83].

In his current summary judgment papers, Aurich states that it is unfair to hold him to this deposition testimony because of the conditions under which it was given (with insufficient notice and during prison confinement in the presence of the Michigan prison warden's secretary) and because he testified at deposition before he had an opportunity to visually observe Nurse Sanchez during his §1983 trial against Deputy Thomas, at which time he says he recognized Nurse Sanchez on the witness stand as the "correct nurse that violated [my] constitutional rights" and refused to have him brought to a hospital for immediate medical attention [DE #126].

In light of these inconsistencies in Aurich's summary judgment statements and prior deposition testimony, the defendant urges the court to strike all current claims against Nurse Sanchez as the equivalent of a "sham" affidavit. The court is not inclined to strike Aurich's current identification of Nurse Sanchez as the alleged perpetrator of the constitutional violations described in his complaint, as it is reasonably conceivable that Aurich may have confused the identity of the prison nurses with whom he dealt, and that he was better able to clarify the roles of respective prison nurses who observed him after having an opportunity to see Nurse Sanchez when she testified as a live witness during the *Aurich v Thomas* trial ( in which Aurich participated by video satellite conference call).

However, because Aurich offers no sworn testimony or other competent evidence establishing that Nurse Sanchez in fact called him "Michigan's responsibility," told him he would have to wait for Michigan authorities to help him with his broken shoulder, and was otherwise "nasty" and "snotty" toward him, the court does not accept these particular allegations as part of the summary judgment evidence before the court in its resolution of the current motions.

6

statements, Aurich also claims that Sanchez ignored his cries of pain as he writhed and wailed on the floor of his jail house cell during the follow up withdrawal evaluations which she performed on March 4th and March 8th.

In Sanchez' summary judgment affidavit, she expressly denies ever receiving complaints from Aurich of toothache or bloody urine or stools, and denies ever telling Aurich he would have to wait for surgery because he was now "Michigan's responsibility." [DE# 101-1]

### III. Discussion

Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners. *Andujar v Rodriguez*, 486 F.3d 1199, 1202 n. 3 (11th Cir. 2007). Because the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eight Amendment for a convicted prisoner, the court analyzes Aurich's claim under the decisional law of both amendments. *Youmans v Gagnon*, 626 F.3d 557, 563 n. 6 (11th Cir. 2010).

Not every claim of inadequate medical attention rises to the level of a constitutional violation. To show that a prison official acted with deliberate indifference to serious medical needs, a prisoner must establish three elements. First, he must satisfy the objective component by showing that he had a serious medical need. Second, he must satisfy the subjective component by showing that a prison official acted with deliberate indifference  Third, as with any tort claim, the prisoner must show that the injury was caused by the defendant's wrongful conduct. *Goebert v Lee County*, 510 F.3d 1312 (11th Cir. 2007);

In this case, the defendant concedes, at least for purposes of her current motion, that Mr.

7

Aurich's evidence shows a serious medical need, i.e. "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v West,* 320 F.3d 1235, 1243 (11th Cir. 2003), citing *Hill v DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1178 (11th Cir. 1994), overruled on other grounds in *Marsh v Butler County, Ala.*, 268 F.3d 1014, 1031 n. 8 (11th Cir. 2001). In addition, the court affirmatively finds that the record evidence establishes that Aurich's shoulder injury constituted a serious medical problem which required a doctor's attention, and thus finds sufficient evidence to satisfy the objective component of the deliberate indifference test. Therefore, the court's examination turns to whether Aurich's evidence shows that there was a deliberate indifference to that need on the part of defendant Sanchez – the subjective component of the test for this type of Fourteenth Amendment violation.

To establish the subjective component, a prisoner must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence. *Bozeman v Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). *McElligott v Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999); *Taylor v Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). Whether a particular defendant has subjective knowledge of a risk of serious harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Goebert v Lee County, supra,* citing *Farmer v Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981, 128 L.Ed.2d 811 (1994). Disregard of the risk is also a question of fact that can be shown by the standard methods. *Id.*, citing *Farmer v Brennan*, 511 U..S at 846, 114 S. Ct. At 1983.

A delay in providing medical treatment can sustain a "deliberate indifference"claim, where

8

the delay has exacerbated the prisoner's injury or unnecessarily prolonged the inmate's pain. *McGowan v Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Harper v Lawrence County, Ala.*, 592 F.3d 1227, 1235 (11th Cir. 2010); *Austin v Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). In this type of case, the nature of the medical need, the reason for the delay and the effect of the delay on the prisoner's medical condition are all relevant factors in determining whether the delay has reached constitutionally intolerable proportions. *See Goebert*, 510 F.3d at 1327; *McElligott,* 182 F.3d at 1255; *H.C. by Hewet v. Jarrard*, 786 F.2d 1080, 1086 (11th Cir. 1986).

The final requirement for establishing deliberate indifference is to show a causal connection between the alleged constitutional violation and the defendant, *Cottone v Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), a factor which may be shown by the defendant's personal participation in the constitutional violation. *Zatler v Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986)(per curiam).

Here, the court finds sufficient evidence to show Nurse Sanchez had actual knowledge of Aurich's serious medical need, and indeed, Nurse Sanchez does not contest that he displayed a serious medical need at the time of intake. In any event, his medical history was readily available to Nurse Sanchez or other prison medical personnel charged with the duty of assessing his condition by a simple telephone call to his treating providers and/or request for medical records. In addition, there is some evidence suggesting that Aurich's family members promptly contacted jail medical personnel to verify issues pertaining to his pre-existing shoulder injury and surgery date.

However, there is no competent summary judgment evidence suggesting that Nurse Sanchez disregarded a known risk of serious harm in her treatment of Aurich. Even assuming that Sanchez had discretion and authority to make an immediate outside medical referral at the point of intake [an unsubstantiated allegation], there is no competent evidence showing that Aurich presented at the jail with a life-threatening medical condition that warranted an immediate outside referral.

9

As for Aurich's allegations regarding Nurse Sanchez's withholding of prescription pain medications, the undisputed evidence shows that: (1) Nurse Sanchez had no authority to write prescriptions or provide prescription medication without a doctor's authorization; (2) jail policy prohibited dispensation of narcotic pain killers to any inmates; (3) Nurse Sanchez requested a physician referral for Aurich at the point of intake; (4) Nurse Sanchez offered Aurich a Motrin which he was unable to take due to allergies; (5) Two days after intake, on March 3, 2006, jail medical personnel provided Aurich with an anti-inflammatory pain killer (Naprosyn) pursuant to a prescription authorized by the prison physician, and Aurich continued to receive this medication at the prescribed dosage rate up through the date of his discharge from the facility on March 10, 2006.

With no evidence that Nurse Sanchez had authority to write prescriptions or dispense prescription medication without a physician's authorization, there is simply no basis in fact to support Aurich's claim that Nurse Sanchez deliberately disregarded a known serious health risk by withholding Aurich's prescription pain medications or by capriciously delaying his access to such medications.

In sum, the uncontradicted summary judgment evidence before the court shows:

(1) As an LPN intake nurse, Nurse Sanchez had no authority to write prescriptions or provide prescription medicine to Sanchez or other inmates.

(2) Under prison protocol, no prison physician or other medical provider had authority to write prescriptions for narcotic pain medication for inmates.

(3) The physicians at the jail had sole authority to make decisions as to the urgency and timing of Aurich's shoulder surgery, including the decision as to whether his condition merited an immediate outside medical referral;

(4) Nurse Sanchez did not have authority to cancel and did not participate in the decision to cancel Aurich's previously scheduled shoulder surgery in Florida or the

10

decision to delay his surgery until after extradition to Michigan[5];

(5) By March 3, 2006, per script authorized by the jail physician, Aurich received Naprosyn painkiller medication and continued to receive this medication at doses prescribed up through date of his transfer from the jail on March 10, 2006;

(6) Aurich was transferred to Michigan state prison on March 10, 2006.

(7) Nurse Sanchez did not unreasonably interfere with, prevent or delay Aurich's access to prescription pain medication during his detention at the jail.

(8) There is no evidence that Aurich complained to Nurse Sanchez of toothache, bloody stools or bloody urine at time of intake, or that Nurse Sanchez ignored Aurich's pleas for help as he allegedly lay crying in pain on the floor of his prison cell during the two follow up evaluations for withdrawal complications. Even if the court assumed that these events occurred, as alleged in Aurich's unsworn summary judgment papers, there is no evidence indicating a causal link between Nurse Sanchez's alleged disregard of these complaints and the precipitation or aggravation of a serious medical condition.

(9) There is no evidence that Nurse Sanchez was aware that denying Aurich an immediate outside hospital/doctor referral posed a substantial risk of harm to Aurich, or that failing to secure suitable over-the-counter pain medication (after Motrin was declined) or facilitating faster access to prescription pain medication, posed a substantial risk of harm to Aurich at the point of intake.

On this predicate, the court finds no genuine issue of material fact as to whether Nurse Sanchez acted with deliberate indifference to a serious medical need of Aurich by failing to secure an immediate outside hospital/doctor referral or deliberately delaying Aurich's access to prescription pain medications, and accordingly shall grant the defendant Sanchez's motion for summary judgment. *See e.g. Smith v R. G. Harris, D.D.S.*, 401 Fed. Appx. 952 (5th Cir. 2010)(unpub)(prison

---

[5] The defendant contends that the decision to delay surgery until after extradition to Michigan was made by the judge presiding over Aurich's extradition hearing, based on a factual finding that the shoulder condition did not present a life threatening medical emergency. The apparent source for this assertion is a reference made in an email sent from Danielle Wagner to Theresa Moe at Preferred Governmental Claims [DE# 112-3], an unauthenticated hearsay document.

As the defendant offers no transcript of the extradition proceedings or other competent evidence of the official proceedings or final disposition of the extradition hearing officer, the court disregards this evidence and makes no affirmative finding regarding the identity of person(s) responsible for the decision to postpone Aurich's surgery until post-extradition.

nurse's failure to write prescription for pain medication for infected teeth did not support deliberate indifference claim where nurse was unauthorized to write prescriptions); *Thomas v Clay*, 411 Fed. Appx. 908 (7th Cir. 2011)(unpub)(jail nurses did not act with deliberate indifference to pretrial detainee's medical needs by allegedly denying and delaying him access to doctors and pain medication after he separated his shoulder, where detainee was immediately treated by medical personnel after his injury and repeatedly seen by doctors when he complained of pain in subsequent months); *Wood v Housewright*, 900 F.2d 1332 (9th Cir. 1990)(confiscation of inmate's sling, causing shoulder pins to break with painful exacerbation of shoulder injury, followed by several days delay in treatment by prison physician who ultimately prescribed anti-inflammatory and pain-killing medication, did not violate Eighth Amendment where condition did not require emergency attention and delay did not substantially harm inmate's treatment, as only remedy immediately available was a prescription for pain killers).[6] *Cf. Farrow v West*, 320 F.3d 1235 (11th Cir. 2003) (15-month delay in completing and delivering inmate's dentures raised jury question as to prison dentists' deliberate indifference toward inmate's serious medical need, where there was no explanation for delay, during which inmate continued to suffer from pain, bleeding and swollen gums and periodic weight loss).

### IV. Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The defendant Leia Sanchez's motion for summary judgment [DE# 101] is **GRANTED.**

---

[6] *See also Sweat v Cook* 2010 WL 1444190 (D.S.C.2010)(failure to provide immediate prescription for pain medication did not rise to level of constitutional violation); *Ammons v Lemke*, 426 F. Supp. 2d 866 (W. D. Wis. 2006)(prison nurses did not act with deliberate indifference to serious wrist injury where they failed to forward health service request to physician, where request mentioned only "serious problem" with hand and nurses told inmate he could discuss injury with nurse practitioner at upcoming appointment); *Littles v Lilly*, 2010 WL 5399215 (N.D. Fla. 2010)(failure to state claim of deliberate indifference against nurses based on inadequate provision of pain medication).

    2. The plaintiff Stuart Duane Aurich's cross-motion for summary judgment [DE# 127] is **DENIED.**

    3. The defendant Leia Sanchez's motion to strike exhibits to plaintiff's response in opposition to defendant's motion for summary judgment [DE# 130, 132] is **DENIED as MOOT.**

    4. Final summary judgment in favor of defendant Sanchez shall enter by separate order of the court pursuant to Fed. R. Civ. P. 58.

    **DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 21st day of November, 2011.

cc.

                                                      Daniel T. K. Hurley
                                                    United States District Judge

Stuart Duane Aurich, *pro se*
all counsel